IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

DENNIS G. MERCURIO, et al.         :
                                    :
            Plaintiffs,             :
v.                                  :    3:16-CV-412
                                    :    (JUDGE MARIANI)
LOUISVILLE LADDER, INC.,            :
                                    :
            Defendant.              :

## MEMORANDUM OPINION
### I. INTRODUCTION

Two motions in limine are pending before the Court in the above-captioned matter. The case arises from Plaintiff Dennis Mercurio's claim that he was using a stepladder designed and manufactured by Defendant Louisville Ladder, Inc., on April 29, 2014, when the stepladder failed, causing him to sustain personal injuries. (Doc. 1-2 at 3-4.) The Complaint included claims for strict liability, negligence, breach of express warranty, breach of implied warranty, and loss of consortium. (Doc. 1-2 at 6-14[1]; Doc. 18-1 at 6-15.) In May 2017, Defendant moved for summary judgment seeking judgment in its favor on all claims. (Doc. 17.) By Order of May 31, 2018, the Court granted the motion in part and denied it in part. (Doc. 31.) The motion was granted as to Plaintiffs' express warranty claim (Count Three), and the motion was granted to the extent Plaintiffs' strict liability (Count One) and

---

[1] In the Complaint attached to the Notice of Removal, a page was missing, and therefore, Count Four for Assumpsit – Implied Warranty was not set out therein. (*See* Doc. 1-2 at 12-13.) Count Four is included in the Complaint submitted in conjunction with Defendant's summary judgment motion. (*See* Doc. 18-1 at 13-14.)

negligence (Count Two) claims relied on allegations of manufacturing defects and/or defective warnings. (*Id.*) Having pled design, manufacturing, and warning defects (*see* Doc. 30 at at 20), the strict liability and negligence claims went forward as to alleged design defects despite the Courts' conclusion that Plaintiffs had not produced evidence sufficient to overcome summary judgment on the manufacturing and defective warning aspects of the claims. (Doc. 30 at 20-23.) Plaintiffs' breach of implied warranty and loss of consortium claims also went forward. (*See id.* at 24; Doc. 1-2.) At the Pretrial Conference held on April 15, 2019, Plaintiffs stated that they were withdrawing their negligence and breach of implied warranty claims. Therefore, the case will go to trial only on Plaintiffs' strict liability claim based on defective design and loss of consortium claim. Only the strict liability claim is relevant to consideration of Plaintiffs' pending motion in limine.

The pending motions are Plaintiffs' Motion in Limine to Preclude Introduction of Compliance with Industry and Government Standards (Doc. 41) and the Motion in Limine of Defendant, Louisville Ladder, Inc., to Preclude Evidence of Other Ladder Accidents and Claims (Doc. 43). By correspondence of March 15, 2019, Plaintiffs' counsel informed the Court that he did not intend to oppose Defendant's motion and withdrew his brief in opposition. (Doc. 46.) Therefore, the Court will grant the Motion in Limine of Defendant, Louisville Ladder, Inc., to Preclude Evidence of Other Ladder Accidents and Claims (Doc.

43).[2] For the reasons discussed below, Plaintiffs' motion (Doc. 41) will be denied in part and deferred in part.

## II. STANDARD OF REVIEW

"The purpose of a motion in limine is to allow the trial court to rule in advance of trial on the admissibility and relevance of certain forecasted evidence." *United States v. Tartaglione*, 228 F. Supp. 3d 402, 406 (E.D. Pa. 2017). A court may exercise its discretion to rule in limine on evidentiary issues "in appropriate cases." *In re Japanese Elec. Prods. Antitrust Litig.*, 723 F.2d 238, 260 (3d Cir. 1983), *rev'd on other grounds sub nom. Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 106 S. Ct. 1348, 89 L. Ed. 2d 538 (1986). Nevertheless, a "trial court should exclude evidence on a motion in limine only when the evidence is clearly inadmissible on all potential grounds." *Tartaglione*, 228 F. Supp. 3d at 406. "[I]n limine rulings are not binding on the trial judge, and the judge may always change his mind during the course of a trial." *Ohler v. United States*, 529 U.S. 753, 758 n.3, 120 S. Ct. 1851, 146 L. Ed. 2d 826 (2000).

Further, while motions in limine may serve as a useful pretrial tool that enables more in-depth briefing than would be available at trial, a court may defer ruling on such motions "if the context of trial would provide clarity." *Frintner v. TruePosition*, 892 F. Supp. 2d 699, 707

---

[2] By not opposing the motion, Plaintiffs agree that they are "precluded from offering evidence or testimony at trial of other accidents and injuries involving ladders, including, but not limited to, references to ladder accidents and injuries in the reports and testimony of their expert, documents regarding other claims and litigation involving Louisville Ladder, Inc., and references to SCSC accident data." (Doc. 43 at 1.)

3

(E.D. Pa. 2012). Indeed, "motions in limine often present issues for which final decision is best reserved for a specific trial situation." *Walden v. Georgia-Pacific Corp.*, 126 F.3d 506, 518 n.10 (3d Cir. 1997). Thus, certain motions, "especially ones that encompass broad classes of evidence, should generally be deferred until trial to allow for the resolution of questions of foundation, relevancy, and potential prejudice in proper context." *Leonard v. Stemtech Health Scis., Inc.*, 981 F. Supp. 2d 273, 276 (D. Del. 2013). Moreover, "*pretrial* Rule 403 exclusions should rarely be granted. . . . [A] court cannot fairly ascertain the potential relevance of evidence for Rule 403 purposes until it has a full record relevant to the putatively objectionable evidence." *In re Paoli R.R. Yard PCB Litig.*, 916 F.2d 829, 859 (3d Cir. 1990) (emphasis in original).

### III. ANALYSIS

With their motion, Plaintiffs seek to preclude the introduction of evidence regarding Defendant's compliance with industry and government standards in the design of the ladder at issue. (Doc. 41 at 10.) Plaintiffs' assertion that standards evidence is properly excluded is based on their interpretation of Pennsylvania strict liability law pursuant to which they argue such evidence is irrelevant and inadmissible. (Doc. 42 at 3.) Defendant's argument that evidence of compliance with regulations and standards "is clearly relevant and admissible on [Plaintiffs'] negligence and breach of implied warranty claims" (Doc. 47 at 4) is now moot based on Plaintiffs' withdrawal of these claims. However, Defendant also avers the Court must consider that Plaintiffs' expert, "[i]n his report, . . . states that his opinions are

4

based on testing the subject ladder, as designed/manufactured and with his proposed design modification, in accordance with two of the ANSI A14.5 design verification tests, the racking and tortional stability tests." (*Id.*) Finally, Defendant states that evidence regarding industry and government standards is admissible under current Pennsylvania law. (*Id.* at 5.)

To put the issue in context, *Azzarello v. Black Bros. Co., Inc.*, 391 A.2d 1020 (Pa. 1978), which drew a strict line between negligence and strict liability, provided the foundation for the development of the rule precluding evidence of a product's compliance with government standards as "irrelevant and inadmissible in a strict products liability action under section 402A of the Restatement (Second) of Torts." *Webb v. Volvo Cars of North America*, 148 A.3d 473, 480-81 (Pa. Super. Ct. 2016). The rule, developed in *Lewis v. Coffing Hoist Division, Duff-Norton Company, Inc.*, 528 A.2d 590 (Pa. 1987), and *Gaudio v. Ford Motor Co.*, 976 A.2d 524 (Pa. Super. Ct. 2009), with reliance on *Azzarello*, was not in dispute until the Pennsylvania Supreme Court decided *Tincher v. Omega Flex, Inc.*, 104 A.3d 328 (Pa. 2014), and overruled *Azzarello*. *Tincher* confirmed that Pennsylvania continued to follow section 402A of the Restatement (Second) of Torts,[3] but the overruling

---

[3] Section 402A of Restatement (Second) of Torts is titled "Special Liability of Seller of Product for Physical Harm to User or Consumer." It provides the following:

> (1) One who sells any product in a defective condition unreasonably dangerous to the user or consumer or to his property is subject to liability for physical harm thereby caused to the ultimate user or consumer, or to his property, if
>     (a) the seller is engaged in the business of selling such a product, and
>     (b) it is expected to and does reach the user or consumer without substantial change in the condition in which it is sold.
>
> (2) The rule stated in Subsection (1) applies although

5

of *Azzarello* and other aspects of the decision cast doubt on the rule that evidence showing compliance with government and industry standards was inadmissible.[4]

---

        (a) the seller has exercised all possible care in the preparation and sale of his product, and
        (b) the user or consumer has not bought the product from or entered into any contractual relation with the seller.

Restatement (Second) of Torts § 402A (1965)

[4] *Tincher* specifically held the following:

    1. This Court's decision in *Azzarello v. Black Brothers Company* [480 Pa. 547], 391 A.2d 1020 (Pa.1978) is hereby overruled.

    2. Having considered the common law of Pennsylvania, the provenance of the strict product liability cause of action, the interests and the policy which the strict liability cause of action vindicates, and alternative standards of proof utilized in sister jurisdictions, we conclude that a plaintiff pursuing a cause upon a theory of strict liability in tort must prove that the product is in a "defective condition." The plaintiff may prove defective condition by showing either that (1) the danger is unknowable and unacceptable to the average or ordinary consumer, or that (2) a reasonable person would conclude that the probability and seriousness of harm caused by the product outweigh the burden or costs of taking precautions. The burden of production and persuasion is by a preponderance of the evidence.

    3. Whether a product is in a defective condition is a question of fact ordinarily submitted for determination to the finder of fact; the question is removed from the jury's consideration only where it is clear that reasonable minds could not differ on the issue. Thus, the trial court is relegated to its traditional role of determining issues of law, *e.g.*, on dispositive motions, and articulating the law for the jury, premised upon the governing legal theory, the facts adduced at trial and relevant advocacy by the parties.

    4. To the extent relevant here, we decline to adopt the Restatement (Third) of Torts: Products Liability §§ 1 *et seq.*, albeit appreciation of certain principles contained in that Restatement has certainly informed our consideration of the proper approach to strict liability in Pennsylvania in the post-*Azzarello* paradigm.

*Tincher*, 104 A.3d at 335.

As a threshold matter, the parties agree that Pennsylvania law applies in this diversity action.[5] (Doc. 42 at 4; Doc. 47 at 5.) Beyond that, the parties steadfastly adhere to their divergent positions regarding the admissibility of the evidence at issue under Pennsylvania strict liability law.

Because this is a diversity action and the Court must apply Pennsylvania law, the Court must now determine the current state of Pennsylvania law on the issue of admissibility of evidence of compliance with government/industry standards in a strict products liability case, evidence which was clearly inadmissible before *Tincher*. The Pennsylvania Supreme Court has not spoken on the issue since *Tincher*. Thus, the issue continues to present a question of Pennsylvania law not addressed by the Supreme Court of Pennsylvania and our task is to predict how that court would rule. *See, e.g., Pa. Sand Corp. v. Caterpillar Tractor Co.*, 652 F.2d 1165, 1167 (3d Cir. 1981). "The policies underlying the applicable legal doctrines, the doctrinal trends indicated by these policies, and the decisions of other courts may also inform our analysis." *Pa. Glass Sand*, 652 F.2d at 1167. Following *Pa. Sand Corp.*, the Circuit Court explained that consideration of lower

---

[5] Related to the matter at issue here, the Third Circuit Court of Appeals noted that admission of evidence related to "trade custom" or "reasonable care" had no place in suits brought under § 402A "as that section has been interpreted by the Pennsylvania courts." *Holloway v. J.B. Systems, Ltd.*, 609 F.2d 1069, 1073 (3d Cir. 1979) (citing *Azzarello v. Black Bros. Co., Inc.*, 391 A.2d 1020 (Pa. 1978)). By extension, this statement acknowledges that Pennsylvania law applies to the admission of evidence related to government/industry standards introduced in the context of a § 402A claim, as is the case here.

7

state courts' decisions on the matter at issue are an integral part of predicting how the highest state court would rule:

> In making this prediction, "we must consider the pronouncements of the lower state courts." *Connecticut Mutual Life Ins. Co. v. Wyman,* 718 F.2d 63, 65 (3d Cir.1983). Although such pronouncements "are not controlling on an issue on which the highest court of the state has not spoken, [we] must attribute significant weight to these decisions in the absence of any indication that the highest state court would rule otherwise." *Wisniewski v. Johns-Manville Corp.,* 759 F.2d 271, 273-74 (3d Cir.1985) (citations omitted).

*State Farm Mut. Auto. Ins. Co. v. Rosenthal,* 484 F.3d 251, 253 (3d Cir. 2007).

Plaintiffs cite *Cancelleri v. Ford Motor Co.,* No. 267 MDA 2015, 2016 WL 82449 (Pa. Super. Ct. Jan. 7, 2016) (not precedential) (not reported in A.3d), in support of the assertion that *Tincher* had no effect on the admissibility of industry standards in a products liability case. (Doc. 42 at 8.) *Cancelleri* concluded that the precedent set out in *Lewis* and *Gaudio* remained unchanged and the trial court had properly determined that evidence of government and industry standards was not admissible. 2016 WL 82449, at *3.

The Court does not find *Cancelleri* persuasive for several reasons. First, the Superior Court provided limited analysis in support of its determination. Second, the opinion was not precedential and, pursuant to Pennsylvania Superior Court I.O.P. § 65.37, is not to be relied upon or cited in another action or proceeding.[6] Third, the firm pronouncement as to the admissibility of industry standards made in *Cancelleri* was made before the Superior Court provided a detailed analysis of the issue in *Webb,* 148 A.3d at 180-81, 83. Finally, as

---

[6] *See* https://www.pacode.com/secure/data/210/chapters65/s65.37.html (last visited April 16, 2019).

8

will be discussed later in the text, Pennsylvania Superior Court Justice Lazarus authored the *Cancelleri* opinion and two years later authored a dissenting opinion in *Dunlap v. Federal Signal Corp.*, 194 A.3d 1067 (Pa. Super. Ct. 2018), in which he expressed his belief that the state of the *Lewis*-based evidentiary rule "remained mostly unanswered" and argued in favor of the admissibility of government/industry standards evidence in some situations. *See Dunlap*, 194 A.3d at 1073-76.

The Court will now focus on the Superior Court's subsequent *Webb* decision and other Superior Court cases which followed *Webb*. Plaintiffs correctly assert that "the *Webb* Court held that that the trial court committed reversible error in permitting the jury to consider evidence regarding the manufacturer's compliance with Federal Motor Vehicle Safety Standards." (Doc. 42 at 8 (citing *Webb*, 148 A.3d at 480-81).) However, post-*Webb* decisions do not consistently read *Webb* to support Plaintiffs' position that such evidence is categorically inadmissible. The questions arise because the *Webb* holding was based, in part, on the fact that *Tincher* had not been decided when the question arose at the trial court level, and, as discussed below, *Webb* raised questions about the application of the rule post-*Tincher*. 148 A.3d at 483.

As noted above, *see supra* pp. 5-6, *Webb* examined the issue of the admissibility of government/industry standards beginning with the origins of the government/industry standard rule in *Lewis v. Coffing Hoist Division, Duff-Norton Co.*, 528 A.2d 590 (Pa. 1987), and *Gaudio v. Ford Motor Co.*, 976 A.2d 524, 543 (Pa. Super. Ct. 2009)). *Webb*, 148 A.3d

at 480-81. *Webb* explained that *Gaudio* relied on *Lewis* in holding that evidence of a product's compliance with government standards is irrelevant and inadmissible in a strict products liability action under section 402A of the Restatement (Second) of Torts, and *Lewis* had relied on *Azzarello* for the proposition that negligence concepts have no place in a case based on strict liability. *Webb*, 148 A.3d at 480-81 (citations and quotations omitted). *Webb* also noted that the *Lewis* court had reasoned that

> evidence of industry standards in a defective design case "go to the reasonableness of the [manufacturer's] conduct in making its design choice." *Id.* at 594. "[S]uch evidence would have created a strong likelihood of diverting the jury's attention from the [product] to the reasonableness of the [manufacturer's] conduct in choosing its design." *Id.*
>
> . . . .
>
> . . . *Lewis* also cited with approval to *Lenhardt v. Ford Motor Co.*, . . . 683 P.2d 1097 (1984): "The *Lenhardt* Court also observed that if a manufacturer's product has design attributes which make it unsafe for its intended use, there is no relevance in the fact that such a design is widespread in the industry." *Id.* at 594.

*Webb*, 148 A.3d at 480-81.

The Court in *Webb*, after discussing the fact that *Tincher* specifically overruled *Azzarello* and cited *Lewis* and *Gaudio* but did not overrule either case, next considered *Tincher's* impact on the prohibition of industry or government standards evidence in a strict liability design defect case, i.e., whether "*Tincher*, by implication, overruled the prohibition." *Id.* at 481. Summarizing that *Azzarello's* strict prohibition on introducing negligence concepts into strict liability claims was no longer the law in Pennsylvania, and *Lewis* and

10

*Gaudio* relied primarily on *Azzarello*, *Webb* acknowledged that the firm division between negligence and strict liability no longer existed. It declined, however, to decide the government/industry standard question based on the prevailing pre-*Tincher* precedent at the time the trial court considered the issue and its conclusion that the overruling of *Azzarello* did not provide a sufficient basis for disregarding the evidentiary rule expressed in *Lewis* and *Gaudio*.[7] 148 A.3d at 483. The Superior Court further discussed the issue as follows:

> While it is clear after *Tincher* that the firm division between strict liability and negligence concepts no longer exists, it is not clear that the prohibition on evidence of government or industry standards no longer applies. *Lewis*, in particular, noted that a defective design could be widespread in an industry. *Lewis*, 528 A.2d at 594. The *Tincher* opinion does not undermine that rationale for excluding governmental or industry standards evidence. Furthermore, *Tincher* expressed two theories of strict products liability—consumer expectations and risk-utility. It is possible that government/industry standards evidence could be admissible under both theories, one and not the other, or neither. It is also possible that the admissibility of such evidence will depend upon the circumstances of a case. The *Tincher* Court noted the possibility of shifting the burden of production and persuasion to the defendant under the risk-utility theory. This burden shift, if it becomes law, may provide defendants a basis to advocate for the admissibility of government or industry standards evidence in risk-utility cases.
>
> These contingencies illustrate that *Tincher* will affect every stage of future products liability cases. Post-*Tincher*, parties must tailor their pleadings, discovery, and trial strategy to one or both of the new theories of liability. **We believe the continued vitality of the prohibition on government and industry standards evidence is a question best addressed in a post-*Tincher* case.**

---

[7] Judgment was entered at the trial court level on March 26, 2014, 148 A.3d at 476, and *Tincher* was decided on November 19, 2014, 104 A.3d 328.

*Webb*, 148 A.3d at 483 (emphasis added).

In the *Webb* analysis, the Superior Court did not specifically recognize *Tincher's* discussion of "related legal issues" where the Court stated

> [w]e recognize—and the bench and bar should recognize—that the decision to overrule *Azzarello* and articulate a standard of proof premised upon alternative tests in relation to claims of a product defective in design may have an impact upon other foundational issues regarding manufacturing or warning claims, and upon subsidiary issues constructed from *Azzarello,* such as the availability of negligence-derived defenses, bystander compensation, or the proper application of the intended use doctrine. *Accord Bugosh* [*v. I.U. North America, Inc.,* 971 A.2d 1228, 1244–45 & 1248–49 (3d Cir. 2009)]. These considerations and effects are outside the scope of the facts of this dispute and, understandably, have not been briefed by the Tinchers or Omega Flex.
>
> This Opinion does not purport to either approve or disapprove prior decisional law, or available alternatives suggested by commentators or the Restatements, relating to foundational or subsidiary considerations and consequences of our explicit holdings. In light of our prior discussion, the difficulties that justify our restraint should be readily apparent. The common law regarding these related considerations should develop within the proper factual contexts against the background of targeted advocacy.

*Tincher*, 104 A.3d at 409-10.

The foregoing discussions found in *Tincher* and *Webb* indicate a recognition that, post-*Tincher*, *Azzarello*-based decisions such as *Lewis* and *Gaudio* would continue to be the subject of debate and uncertainty. Although *Webb* concluded that "the continued vitality of the prohibition on government and industry standards evidence is a question best addressed in a post-*Tincher* case," 148 A.3d at 483, the Superior Court has not found an opportunity to directly address or decide the issue since then.

The issue arose in *Renninger v. A & R Mach. Shop*, 163 A.3d 988 (Pa. Super. Ct. 2017), but, because of the parties' limitation of their arguments, the Superior Court did not reach the question whether the trial court had erred in permitting the defense expert to introduce and rely upon industry standards after *Tincher*.[8] 194 A.3d at 1072 n.8.

The Pennsylvania Superior Court discussed the issue of the admissibility of government/industry standards in *Dunlap v. Federal Signal Corp.*, 194 A.3d 1067 (Pa. Super. Ct. 2018).[9] In the split decision, the *Dunlap* majority reiterated *Webb's* conclusion that "the overruling of *Azzarello* did not provide a sufficient basis to disregard the evidentiary rule espoused in *Lewis* . . . and *Gaudio*" and relied on *Webb* for the proposition "that *Tincher* did not undermine the concern, identified in *Lewis*, that defective design could be widespread in the industry, and hence, evidence that a product comported with industry standards was not proof of non-defectiveness." 194 A.3d at 1072. Following these statements, the majority specifically noted that "[t]he continued viability of the evidentiary

---

[8] *Renninger* pointed to *Kim v. Toyota Motor Corp.*, 197 Cal. Rptr. 3d 647 (App. 2016), *review granted and opinion superseded*, 200 Cal. Rptr. 3d 768, 368 P.3d 311 (2016), as illustrative of the competing arguments for and against industry standards evidence in strict products liability/design defect cases. 163 A.3d at 1001. In August 2018, the California Supreme Court held that, when a plaintiff alleges design defect under the risk-benefit test, standards evidence is not categorically inadmissible, nor is it categorically admissible: admissibility will depend on the ordinary rules of evidence in the circumstances of the case. Kim v. Toyota Motor Corp., 424 P.3d 290, 300 (Ca. 2018). The Supreme Court also summarized relevant guidance for conducting the appropriate inquiry. *Id.* at 301.

[9] *Dunlap* considered *Tincher's* application to the plaintiffs' argument that proof that their alternative design comported with industry standards was enough to prove its effectiveness for all users, an argument which had been raised before the trial court on a motion for reconsideration. 194 A.3d at 1072-73. The trial court had determined that "compliance with industry standards alone was not *prima facie* evidence that a product's design was non-defective and effective, and held that expert opinion was necessary to establish that the proposed alternative design was effective and met the need of all users." *Id.* at 1073.

rule espoused in *Lewis* and *Gaudio* is not before us." 194 A.3d at 1072 n.8. The majority further noted that *Renninger* had not reached the issue although the question had been presented whether the trial court had erred in allowing evidence of industry standards based on the reasoning that "industry standards may supply the jury with a useful starting place from which to evaluate the ... design." *Id.*

Despite the *Dunlap* majority's pronouncement that it had not considered the viability of the evidentiary rule, Judge Lazarus's dissent begins with the statement "I am constrained to disagree with the learned Majority's conclusion that this Court's decision in *Webb* definitively reestablished a bright line evidentiary rule barring evidence of a product's compliance with governmental and/or industry standards." 194 A.3d at 1073-74. Judge Lazarus stated that he believed "the question of whether governmental/industry standard evidence is admissible in *some* products liability cases post-*Tincher* remains mostly unanswered." *Id.* at 1075. He then set out useful guidance on the matter of admissibility:

> It remains, though, that paramount to strict product liability theory, as *Lewis* and *Gaudio* suggest, is the understanding that liability attaches regardless of the reasonableness of a manufacturer's actions even if the defendant exercised all possible due care. *See* Restatement (Second) of Torts § 402A. Accordingly, to prove a strict products liability claim, a plaintiff need only show that a seller (i.e., a manufacturer or distributor) placed in the market a product in a defective condition. Post-*Tincher* analysis should focus on the product itself rather than the reasonableness of the manufacturing, design, or distribution the product. Therefore, I agree that nothing in *Tincher*, as recognized by *Webb*, necessarily allows factfinders to consider governmental or industry standard evidence as dispositive in strict liability cases.

> Even so, a *plaintiff* in a strict product liability action, like [the plaintiffs] here, may open the door to the introduction by a defendant of evidence of compliance with industry or governmental standards if a plaintiff introduces witness testimony regarding such standards during direct or cross-examination. [The plaintiffs] may be willing to assume this risk, but to the extent that a plaintiff introduces governmental/industry standard evidence, the opening so created should be reasonably related in scope to the substance of the offending testimony. *See Gaudio*, 976 A.2d at 544.
>
> Here, [the plaintiffs], *not* [the defendant], proffered through [their expert's] testimony regarding industry standards for sirens, but only to show their alternative design was effective. As proffered, such evidence does not: (1) draw our attention to the reasonableness of [the defendant's] conduct in choosing its design; or (2) suggest defective designs are widespread in the siren industry. Rather, it purportedly proves that a different design that comports with siren industry standards is still effective.
>
> In sum, I do not believe this Court's decision in *Webb* stands for the broad holding the Majority characterizes in its opinion. The *Webb* Court, multiple times, expressly states that the question of whether governmental or industry standard evidence is admissible in strict products liability cases remains open. *See generally Webb*, 148 A.3d at 483.

*Dunlap*, 194 A.3d at 1075–76.

Importantly, the *Dunlap* majority agreed with Judge Lazarus in part:

We do not disagree with the learned Dissent that this Court posited in *Webb* . . . that the evidentiary rule prohibiting admission of industry standards might be re-examined post-*Tincher*. Nonetheless, in *Webb*, this Court reasoned that *Tincher* did not abrogate the accepted notion that defective design can be widespread in an industry, and that compliance with industry standards is not proof of non-defectiveness.

194 A.3d at 1072 n.7.

This long and winding road through the past and present state of the government/industry standard admissibility issue shows that no lower Pennsylvania Court

15

has provided a definitive ruling on the ongoing vitality of the evidentiary rule now before the Court. However, to adhere to the strict prohibition of such evidence based on the *Lewis/Gaudio* rule does not comport with the dicta contained in *Tincher* and *Webb* or the Superior Court's tacit acknowledgment in *Renninger* and *Dunlap* that the issue remained unresolved. Therefore, to balance the concerns of proper adherence to precedent and Pennsylvania courts' subsequent consideration of the issue, the Court concludes that *Dunlap* presents an acceptable approach to the issue of admissibility presented with Plaintiffs' motion.

In keeping with the agreement of both the majority and dissent in *Dunlap* that *Webb* recognized that *Tincher* did not abrogate the accepted notion that defective design can be widespread in an industry, and that compliance with industry standards is not proof of non-defectiveness, 194 A.3d at 1072 & n.7, 1075-76, the Court concludes that evidence of compliance with government/industry standards introduced to show proof of non-defectiveness will be not be admissible.

In keeping with *Webb's* recognition that after *Tincher* "it is not clear that the prohibition on evidence of government or industry standards no longer applies," 148 A.3d at 483, the Court agrees with the *Dunlap* dissent's consideration of introduction of government/industry standard evidence by a plaintiff and his conclusion that a defendant may respond when a plaintiff opens the door. As set out above, Judge Lazarus opined that

> a *plaintiff* in a strict product liability action . . . may open the door to the introduction by a defendant of evidence of compliance with industry or

16

governmental standards if a plaintiff introduces witness testimony regarding such standards during direct or cross-examination. Plaintiffs may be willing to assume this risk, but to the extent that a plaintiff introduces governmental/industry standard evidence, the opening so created should be reasonably related in scope to the substance of the offending testimony.

194 A.3d at 1076.

In sum, the Court agrees that if Plaintiffs introduce evidence of compliance with government/industry standards, Defendant will be allowed to respond accordingly. If evidence of compliance with government/industry standards is introduced, the jury will be instructed that compliance with government/industry standards is not proof of non-defectiveness.

Given the record before the Court and the parties' filings regarding the motion in limine, a more definitive ruling is not appropriate at this stage of the proceedings. Therefore, to the extent Plaintiffs request the Court to *categorically* "preclude Introduction of Evidence of Compliance With Industry and Government Standards in the Design of subject Louisville Ladder, Inc. fiberglass stepladder" (Doc. 41 at 10), the motion will be granted as modified. Consistent with the above, should Plaintiffs offer evidence of industry standards in support of their claim of design defect or should such evidence be made use of by Plaintiffs' expert, Defendant shall be permitted to offer evidence in rebuttal reasonably related in scope to Plaintiffs' evidence on the issue.

## IV. CONCLUSION

For the reasons discussed above, Plaintiffs' Motion in Limine to Preclude Introduction of Compliance with Industry and Government Standards (Doc. 41) will be GRANTED AS MODIFIED, and the Motion in Limine of Defendant, Louisville Ladder, Inc., to Preclude Evidence of Other Ladder Accidents and Claims (Doc. 43) will be GRANTED. An appropriate Order is filed simultaneously with this Memorandum Opinion.

Robert D. Mariani
United States District Judge